UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
PENELOPE IFILL,                                                          Index No.

                   Plaintiff,

    -against-

UNITED PARCEL SERVICE,
WILLIAM SEWARD, BERNARD COLLINS
and MICHAEL IMONDI,

                 Defendants.
-----------------------------------------------------------X

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Penelope Ifill ("Plaintiff"), by and through her undersigned counsel, as and for

her Complaint in this action against Defendants United Parcel Service ("UPS"), William Seward

("Seward"), Bernard Collins ("Collins") and Michael Imondi ("Imondi") (collectively

"Defendants") hereby alleges as follows:

## NATURE OF THE CLAIMS

1.      This is an action for declaratory, injunctive and equitable relief, as well as

monetary damages, to redress Defendants' unlawful employment practices, including their

unlawful discrimination and harassment of, and retaliation against Plaintiff in violation of Title

VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. ("Title VII"); the

Americans with Disabilities Act, as amended, 42 U.S.C. §§ 12101 et seq. ("ADA"); Section

1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981; the New York State Human Rights Law,

New York Executive Law §§ 290 et seq. and the New York City Human Rights Law, New York

Administrative Code §§ 8-101 et seq.

## JURISDICTION AND VENUE

2.      The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and

1343, as this action involves federal questions regarding the deprivation of Plaintiff's civil rights

under Title VII and the ADA.  The Court has supplemental jurisdiction over Plaintiff's related

claims arising under state and city law pursuant to 28 U.S.C. § 1367(a).

3.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a

substantial part of the events or omissions giving rise to this action, including the unlawful

employment practices alleged herein, occurred in this district.

## PARTIES

4.       Plaintiff Penelope Ifill is a female employee of Defendant UPS who resides in the

State of New York, Richmond County.  At all relevant times, she met the definition of an

"employee" under all applicable statutes.

5.      Defendant UPS is a corporation with its headquarters located at 55 Glenlake

Parkway, NE, Atlanta, GA  30328 with offices located at 643 West 43rd Street, New York, New

York 10036.  At all relevant times, Defendant UPS has met the definition of an "employer"

under all applicable statutes.

2

6.    Defendant William Seward is a Caucasian/White male who resides in New York State.  At all relevant times, he was a Director of National Accounts, in which capacity he participated directly in the unlawful employment decisions and actions taken against Plaintiff.

7.    Defendant Bernard Collins is a Caucasian/White male who resides in the New York State.  At all relevant times, he was a Regional Human Resources Manager,  in which capacity he participated directly in the unlawful employment decisions and actions taken against Plaintiff.

8.    Defendant Michael Imondi is a Caucasian/White male who resides in New York State.  At all relevant times, he was Plaintiff's direct supervisor, in which capacity he participated directly in the unlawful employment decisions and actions taken against Plaintiff.

## ADMINISTRATIVE PROCEDURES

9.    On or about May 27, 2003, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging violations of Title VII and the ADA.  On or about March 1, 2004, Plaintiff filed an Amended Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging further violations of Title VII and the ADA.  These charges arose out of the same facts alleged herein.

10.    On or about May 5, 2004, Plaintiff Ifill received her Notice of a Right to Sue from the EEOC relating to both her original and amended Charges of Discrimination.

**11.**    An action in this case was filed within ninety (90) days of the receipt of Plaintiff Ifill's Notice of the Right to Sue from the EEOC.

**12.**    Prior to the commencement of this action, a copy of this Complaint was served on the New York City Commission on Human Rights and the Office of the Corporation Counsel of the City of New York, thereby satisfying the notice requirements of § 8-502 of the New York City Administrative Code.

**13.**    Any and all other prerequisites to the filing of this suit have been met.

## FACTUAL ALLEGATIONS

14.    Plaintiff is a disabled black West Indian-American female employee of Defendant UPS, where she has worked for almost 15 years. Plaintiff works at the UPS facility in midtown Manhattan located at 643 West 43rd Street, New York, New York 10036.

15.    In 1991, Plaintiff suffered a work-related injury, which left her with a herniated disc and nerve damage. After a medical examination conducted by the New York State Workers' Compensation Board, Plaintiff was classified as permanently partially disabled. Plaintiff thereafter provided Defendant UPS with medical records documenting her disability.

16.    Despite her disability, Plaintiff steadily rose through the ranks at Defendant UPS, earning numerous promotions.

17.    In December 2000, Plaintiff became a National Accounts Manager for Business

Development at Defendant UPS. In this position, Plaintiff was responsible for, among other things, managing a base of customer accounts and handling all business development related to those accounts. Plaintiff was also the only black out of eleven National Accounts Managers in her group.

18.    Throughout her employment as a National Accounts Manager, Plaintiff was harassed and discriminated against on the basis of her race, gender and disability by her group manager and members of the Human Resources Department at Defendant UPS, including, but not limited to, Defendant William Seward, a Director of National Accounts, and Defendant Bernard Collins, a Regional Human Resources Manager, both of whom are white males.

19.    In February 2002, her direct manager, Defendant Seward, called her into his office one afternoon and, in an angry, confrontational manner, falsely accused her of working as a real estate broker on company time. With a raised voice, he repeatedly banged his hand on his desk as he interrogated her about the matter.

20.    Even though Plaintiff explained to Defendant Seward that Plaintiff was not a real estate broker and that he was mistaken, he made her write a statement regarding their conversation. After Plaintiff provided him with that statement, he became enraged and took her to the Human Resources Department. When they got to Human Resources, however, no one was present, as it appeared that everyone had gone home for the day.

21.    Undaunted, Defendant Seward demanded that Plaintiff stay late at work that

5

evening and re-write her written statement about their conversation, even though Plaintiff told

him that she wanted to go home.  Defendant Seward continued to demand that she revise the

statement to his liking and continued to act in a hostile manner towards her.  Plaintiff felt

physically threatened by him, particularly because he is much taller than Plaintiff and they were

alone in the department.  The stress from this situation caused Plaintiff to feel physically ill, and

she had to leave work immediately.

22.    Following this incident, Plaintiff called Defendant UPS' "1-800" employee

hotline, which is one of the avenues of complaint offered by Defendant UPS, and filed a

harassment complaint against Defendant Seward.  Despite her complaint, Defendant Seward

continued to harass her over the next few months over small, petty things.

23.    During this time period, Plaintiff was in a serious car accident and sustained

multiple injuries, aggravating her previous injury.  As a result of that accident, Plaintiff had to go

out on medical leave for six months and undergo extensive physical rehabilitation.

24.    In October 2002, her treating physician cleared her to return to work on a part-

time basis.  Specifically, her doctor instructed that Plaintiff work only a few hours per day doing

deskwork and with significant restrictions.  Upon her return, Plaintiff provided Defendant

Seward with the doctor's note indicating that she could work part-time but with physical

restrictions.

25.    Despite her doctor's note, Defendant Seward demanded that Plaintiff resume

working a full-time work schedule of 9 ½ hours per day.  When Plaintiff pointed to her medical restrictions, he immediately summoned Gina Bridges, a UPS Region Nurse, to meet with them. At that meeting, Plaintiff explained to Defendant Seward and Ms. Bridges that Plaintiff was still suffering from pain, could not sit down for long periods of time, and would miss her physical therapy sessions if they forced her to work 9 ½ hours each day.

26.    Defendant Seward and Ms. Bridges summarily dismissed her concerns and claimed that there were no restrictions placed on the amount of time Plaintiff could work each day.  They also threatened her that her inability to work 9 ½ hours per day would be considered as job abandonment.  Fearing the loss of her job, Plaintiff worked the schedule that they demanded, against her will, for several days, and at times in acute pain.

27.    While performing her duties, Plaintiff also repeatedly advised Defendant Seward that she was in pain, but he simply ignored her.  As a result of the Company's failure to provide her with a reasonable accommodation and being forced to work so many hours during this period of her recovery, Plaintiff was rendered unable to walk for a period of time and had to have her chiropractor manipulate her hip and spine in order to be able to walk again.  In addition, her nerve damage was further aggravated.

28.    After returning to work, Plaintiff also responded to a company survey that was apparently sent to employees who had previously called the "1-800" employee hotline. Specifically, on November 27, 2002, Plaintiff sent a three-page memorandum to the Human

Resources Department at corporate headquarters in Atlanta, Georgia, complaining about the harassment and discrimination she was experiencing as a disabled black female employee. Plaintiff also complained about the fact that Defendant Seward forced her to work 9 ½ hours per day immediately upon her return despite her doctor's note and expressed concerns that Plaintiff was being set up for a demotion or termination.

29.     Defendant UPS thereafter retaliated against her.

30.     For example, a few days later, the Employee Relations Manager in Human Resources, Lee Sardella, another white male, accused her of circumventing normal company procedures by sending the memorandum to headquarters, and claimed that Plaintiff should have spoken about the matter with Defendant Seward's supervisor.  Defendant Seward also recommended that Plaintiff accept a voluntary demotion, which Plaintiff rejected outright because such a demotion would have been baseless and purely retaliatory.

31.     Following this meeting, Plaintiff was advised by Defendant Seward and his supervisor that she was only going to receive half of the year-end stock award she was entitled to receive as a National Accounts Manager, allegedly because she had several complaints about her work performance, which had, however, been satisfactory.

32.     When Plaintiff was advised about her stock award, neither Defendant Seward nor his supervisor talked to her about any of her volume and revenue numbers, which Defendant UPS uses to evaluate the work performance of all National Accounts Managers and to calculate

their total compensation.  They also never told her that she was being demoted.  Rather, they explained that if Plaintiff did not receive any customer complaints in 2003, they would have no problem with her work performance.

33.    The denial of her full stock award was an act of retaliation for her memorandum and earlier complaint of harassment against Defendant Seward.  It was also in violation of Defendant UPS' written policy, which states that any employee who is not going to receive his or her entire stock award must be given notice of this fact by September of that year.  Plaintiff never received any such notice.  Plaintiff also never received her company stock certificate on the day Plaintiff was told of her stock award.  Other National Accounts Managers who are white and/or male and not disabled, however, got their stock certificates when they learned about their awards.

34.    Plaintiff had not received a single customer complaint in 2003.  Moreover, during the first quarter, Plaintiff had been 97.6% effective in volume and 90.7% in revenue with respect to her expected goals.  Additionally, in March 2003 her Day Sales Outstanding figure, which shows how quickly a customer pays Defendant UPS, was the best out of the eleven National Accounts Managers in her group.

35.    In or about April 2003, Defendant Seward left a voicemail with all of the National Account Managers in his group, stating that seven of them were at forecast to meet their first quarter expected goals, while four others were "in striking distance" of doing so.  His voicemail indicated that not all National Accounts Managers in her group were going to be 100% effective

9

in volume and revenue for the quarter.

36.     Despite her satisfactory work performance for the first quarter of 2003, Plaintiff continued to suffer harassment, discrimination and retaliation based upon her race, gender and disability.

37.     For example, in March 2003, the building engineers at work adjusted the cubicle in which Plaintiff work a few inches because it was too small.  When Defendant Seward saw the engineers making the adjustment, he interrogated them and then called her into his office, where he berated her.

38.     Specifically, Defendant Seward's face turned red and his hands were shaking as he yelled at her for having her cubicle adjusted, claiming that her behavior was "unequivocally unacceptable behavior" and showed poor decision-making.  He also proceeded to inform her that her actions enraged other National Account Managers in her work area, thus negatively impacting office morale.

39.     Shortly thereafter, Defendant Seward called her again into his office and stated that her performance for the first quarter of 2003 was unsatisfactory.  By way of example, he claimed that her decision to have her cubicle adjusted was borderline insubordination.  He also told her that Plaintiff was being demoted and that Plaintiff had to report to a lesser position the next day.

40.    Plaintiff thereafter was subjected to a number of very stressful, harassing and lengthy meetings with Defendants Seward and Collins.  Specifically, on April 3, 2003, Defendant Collins admitted to her that he did not see how Plaintiff could be demoted in light of her volume and revenue numbers.  Despite this admission, he told her that Plaintiff had to choose one of the following four options: (i) accept a demotion, (ii) go on probation, (iii) remain in her position and transfer to another group manager, or (iv) voluntarily leave the Company.  Plaintiff rejected all of these options because they were totally unwarranted and further acts of discrimination, harassment and retaliation.

41.    Over several days, Defendant Collins repeatedly attempted to badger her into accepting one of the options that Plaintiff had been given.  As for Defendant Seward, he pointed to bogus performance issues in an effort to get her to acquiesce in their wishes.

42.    In addition, Plaintiff later reviewed a private file that Defendant Seward had been maintaining on her.  Upon her review of that file, she found that it contained a number of outright lies about her work performance, the meeting on December 11, 2002, and alleged conversations that Plaintiff had with Defendant Seward.  Some of the documents also appeared to have been altered.

43.    Inexplicably, Defendant Seward also had a picture in the file of a Mercedes Benz automobile that Plaintiff previously owned and drove to work.  There was simply no reason for Defendant Seward to have that picture of her car in this private file maintained by him.

11

44.    On April 11, 2003, Plaintiff was officially informed that she would be demoted. Thereafter, Plaintiff worked as a Retail Channel Supervisor.  A white female Acting National Accounts Manager, Susan Bauerfind, assumed her previous duties.

45.    Plaintiff's demotion, along with the harassment and discrimination Plaintiff have faced at Defendant UPS, was based on her race, gender and disability and was an act of retaliation committed against her by Defendant UPS.

46.    In addition, after Plaintiff filed her Charge of Discrimination with the EEOC, Plaintiff was further retaliated against and harassed at Defendant UPS.

47.    Specifically, Plaintiff's manager, Defendant Michael Imondi, required her to report to him her whereabouts at all times during the day, which he did not require of other supervisors who reported to him.  If Plaintiff stepped away from her desk even for a few minutes, Defendant Imondi left her voicemails and affixed written notes on her computer and desk.

48.    When Plaintiff returned from attending field visits or taking care of other business matters, Defendant Imondi also interrogated her and demanded proof of where she had been. Upon information and belief, he did not interrogate or make similar demands of other supervisors.  He has also committed other acts of harassment against Plaintiff.  Defendant Imondi's harassment of Plaintiff was retaliatory in nature and caused her to suffer severe emotional distress.

49.    Since February 2, 2004, Plaintiff has been out from work due to a work-related disability.  Plaintiff provided the required medical documentation substantiating the medical basis for her disability leave to Defendants. Despite the fact that Plaintiff advised Defendants of her medical condition, provided them with a doctor's note and followed the instructions of Qin Wang, Defendant UPS' Medical Services Supervisor/Occupational Health Nurse relating to the processing of her disability leave, Plaintiff was informed by letter dated February 16, 2004, that her salary was suspended.  The letter, which contained fabrications and distortions of the truth, falsely claimed that since Plaintiff went out on disability leave on February 2, 2004, Plaintiff had not communicated with Defendant Imondi or Defendant UPS' disability carrier and had ignored instructions given her by Ms. Wang.  This letter and the unjust suspension of her salary are further acts of retaliation taken against her by Defendant UPS.

50.    Defendants have violated her rights under Title VII of the Civil Rights Act of 1964 and Section 1981 by subjecting her to harassment, discrimination, and retaliation, because Plaintiff is a black West Indian-American female employee.

51.    Defendants have violated her rights under the Americans with Disabilities Act by subjecting her to harassment and discrimination, as well as retaliation, because of her disability, because Plaintiff is regarded as disabled and/or because of her record of disability.

52.    Plaintiff was aware of other instances of discrimination against other black employees, including other black National Accounts Managers, and Plaintiff believe that

Defendants have a pattern and practice of engaging in harassment and discrimination against black employees.

## AS AND FOR A FIRST CAUSE OF ACTION

### (Discrimination and Harassment in Violation of Title VII)

53.     Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 52, inclusive, as if fully set forth herein.

54.     Defendants have discriminated against Plaintiff on the basis of her sex, race and disability in violation of Title VII by denying to her equal terms and conditions of employment, including but not limited to, demoting Plaintiff, denying her the opportunity to work in an employment setting free of unlawful harassment, and denying her compensation, job titles and benefits equal to that of white and male employees.

55.     Defendants have discriminated against Plaintiff on the basis of her sex, race and disability, in violation of Title VII by fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile work environment that has included, among other things, severe and pervasive harassment of Plaintiff.

56.     As a direct and proximate result of Defendants' unlawful discriminatory conduct and harassment in violation of Title VII, Plaintiff has suffered and continues to suffer monetary and/or economic harm, including but not limited to, loss of past and future income, compensation and benefits for which she is entitled to an award of damages.

57.     As a direct and proximate result of Defendants' unlawful discriminatory conduct and harassment in violation of Title VII, Plaintiff has suffered and continue to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of damages.

58.     Defendants' unlawful discriminatory actions and harassment constitute malicious, willful and wanton violations of Title VII for which Plaintiff is entitled to an award of punitive damages.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Retaliation in Violation of Title VII)

59.     Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 58, inclusive, as if fully set forth herein.

60.     Defendants have retaliated against Plaintiff in violation of Title VII for her opposition to Defendants' discriminatory practices toward herself and other black and female employees and/or her participation in lodging complaints about Defendants' discriminatory practices toward herself and other black and female employees.

61.     As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of Title VII, Plaintiff has suffered and continues to suffer monetary and/or economic harm, including but not limited to, loss of past and future income, compensation and benefits for

which she is entitled to an award of damages.

62.     As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of Title VII, Plaintiff has suffered and continue to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of damages.

63.     Defendants' unlawful retaliatory actions constitute malicious, willful and wanton violations of Title VII for which Plaintiff is entitled to an award of punitive damages.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Discrimination and Harassment in Violation of ADA)

64.     Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 63, inclusive, as if fully set forth herein.

65.     Defendants have discriminated against Plaintiff in violation of the ADA by denying her equal terms and conditions of employment because of her disability, because Defendants regarded her as disabled, and/or because of Plaintiff's record of disability.

66.     Defendants have discriminated against Plaintiff in violation of the ADA by denying her equal terms and conditions of employment because of her disability, because Defendants regarded her as disabled, and/or because of Plaintiff's record of disability.

67.     Defendants have discriminated against Plaintiff in violation of the ADA by

creating, fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile work environment that included, among other things, severe and pervasive harassment of Plaintiff because of her disability, because Defendants regarded her as disabled, and/or because of Plaintiff's record of disability.

68.    As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of the ADA, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including but not limited to, loss of past and future income, compensation and benefits.

69.    As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of the ADA, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

70.    Defendants' unlawful and discriminatory actions constitute willful violations of the ADA for which Plaintiff is entitled to an award of punitive damages.

## AS AND FOR A FOURTH CAUSE OF ACTION

**(Retaliation in Violation of ADA)**

71.     Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 70, inclusive, as if fully set forth herein.

72.     Defendants have retaliated against Plaintiff in violation of the ADA for her opposition to Defendants' discriminatory practices toward herself and/or her participation in lodging complaints about Defendants' discriminatory practices toward herself.

73.     As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the ADA, Plaintiff has suffered and continues to suffer monetary and/or economic harm, including but not limited to loss of past and future income, compensation and benefits for which she is entitled to an award of damages.

74.     As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the ADA, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of damages.

## AS AND FOR A FIFTH CAUSE OF ACTION

18

**(Discrimination and Harassment in Violation of Section 1981)**

75.    Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 74, inclusive, as if fully set forth herein.

76.    Defendants have discriminated against Plaintiff on the basis of her Race and/or Color (African-American/Black) in violation of Section 1981 by denying her the same terms and conditions of employment available to employees who are not African-American/Black, including but not limited to, demoting Plaintiff, denying her the opportunity to work in an employment setting free of unlawful harassment, and denying her compensation, job titles and benefits equal to that of white and male employees.

77.    Defendants have discriminated against Plaintiff on the basis of her Race and/or Color (African-American/Black) in violation of Section 1981 by fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile work environment that has included, among other things, severe and pervasive harassment of Plaintiff.

78.    As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of Section 1981, Plaintiff has suffered, and continues to suffer, harm for which she is entitled to an award of monetary damages and other relief.

79.    Defendants' unlawful and discriminatory actions constitute malicious, willful and wanton violations of Section 1981 for which Plaintiff is entitled to an award of punitive damages.

## AS AND FOR A SIXTH CAUSE OF ACTION

### (Retaliation in Violation of Section 1981)

80.     Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 79, inclusive, as if fully set forth herein.

81.      Defendants have retaliated against Plaintiff by, inter alia, suspending her compensation and depriving her of earned compensation, in violation of Section 1981 for her opposition to and/or her participation in lodging complaints against Defendants' discriminatory practices.

82.      As a direct and proximate result of Defendants' unlawful and retaliatory conduct in violation of Section 1981, Plaintiff has suffered, and continues to suffer, harm for which she is entitled to an award of monetary damages and other relief.

83.      Defendants' unlawful and retaliatory actions constitute malicious, willful and wanton violations of Section 1981 for which Plaintiff is entitled to an award of punitive damages.

## AS AND FOR A SEVENTH CAUSE OF ACTION

### (Discrimination and Harassment in Violation of New York State Human Rights Law)

84.     Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 83, inclusive, as if fully set forth herein.

85.     Defendants have discriminated against Plaintiff on the basis of her sex, race and

disability, in violation of the New York State Human Rights Law by denying her equal terms and conditions of employment, including but not limited to, demoting Plaintiff, denying her the opportunity to work in a setting free of unlawful harassment, and denying her compensation, job titles and benefits equal to that of white and male employees.

86.    Defendants have discriminated against Plaintiff on the basis of her sex, race and disability, in violation of the New York State Human Rights Law by creating, fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile work environment that included, among other things, severe and pervasive harassment of Plaintiff.

87.    As a direct and proximate result of Defendants' unlawful discriminatory conduct and harassment in violation of the New York State Human Rights Law, Plaintiff has suffered and continues to suffer monetary and/or economic harm, including but not limited to, loss of past and future income, compensation and benefits for which she is entitled to an award of damages.

88.    As a direct and proximate result of Defendants' unlawful discriminatory conduct and harassment in violation of the New York State Human Rights Law, Plaintiff has suffered and continue to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of damages.

## AS AND FOR AN EIGHTH CAUSE OF ACTION

**(Retaliation in Violation of New York State Human Rights Law)**

89.     Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 88, inclusive, as if fully set forth herein.

90.     Defendants have retaliated against Plaintiff in violation of the New York State Human Rights Law for her opposition to Defendants' discriminatory practices toward herself and other black and female employees and/or her participation in lodging complaints about Defendants' discriminatory practices toward herself and other black and female employees.

91.     As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the New York State Human Rights Law, Plaintiff has suffered and continues to suffer monetary and/or economic harm, including but not limited to loss of past and future income, compensation and benefits for which she is entitled to an award of damages.

92.     As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the New York State Human Rights Law, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of damages.

## AS AND FOR A NINTH CAUSE OF ACTION

**(Discrimination and Harassment in Violation of New York City Human Rights Law)**

93.     Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 92, inclusive, as if fully set forth herein.

94.     Defendants have discriminated against Plaintiff on the basis of her sex, race and disability, in violation of the New York City Human Rights Law by denying her equal terms and conditions of employment, including but not limited to, demoting Plaintiff, denying her the opportunity to work in a setting free of unlawful harassment, and denying her equal compensation, job titles and benefits to those provided to white and male employees.

95.     Defendants have discriminated against Plaintiff on the basis of her sex, race and disability, in violation of the New York City Human Rights Law by creating, fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile work environment that included, among other things, severe and pervasive harassment of Plaintiff.

96.     As a direct and proximate result of Defendants' unlawful discriminatory conduct and harassment in violation of the New York City Human Rights Law, Plaintiff has suffered and continues to suffer monetary and/or economic harm, including but not limited to, loss of past and future income, compensation and benefits for which she is entitled to an award of damages.

97.     As a direct and proximate result of Defendants' unlawful discriminatory conduct and harassment in violation of the New York City Human Rights Law, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to

23

depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of damages.

98.     Defendants' unlawful discriminatory actions and harassment constitute malicious, willful and wanton violations of New York City Human Rights Law for which Plaintiff is entitled to an award of punitive damages.

## AS AND FOR A TENTH CAUSE OF ACTION

### (Retaliation in Violation of New York City Human Rights Law)

99.     Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 98, inclusive, as if fully set forth herein.

100.    Defendants have retaliated against Plaintiff in violation of the New York City Human Rights Law for her opposition to Defendants' discriminatory practices toward herself and other black and female employees and/or her participation in lodging complaints about Defendants' discriminatory practices toward herself and other black and female employees.

101.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the New York City Human Rights Law, Plaintiff has suffered and continues to suffer monetary and/or economic harm, including but not limited to loss of past and future income, compensation and benefits for which she is entitled to an award of damages.

102.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the New York City Human Rights Law, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of damages.

103.    Defendants' unlawful retaliatory actions constitute malicious, willful and wanton violations of New York City Human Rights Law for which Plaintiff is entitled to an award of punitive damages.

## AS AND FOR AN ELEVENTH CAUSE OF ACTION
### (Intentional Infliction of Emotional Distress)

104.    Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 103, inclusive, as if fully set forth herein.

105.    Defendants engaged in conduct toward Plaintiff that is extreme and outrageous so as to exceed the bounds of decency in a civilized society.

106.    Among other conduct, Defendants' pervasive pattern of unfair criticism, harassment and other adverse action, including a demotion of Plaintiff, constitutes extreme and outrageous conduct that exceeds the bounds of decency in a civilized society.

107.    By their actions and conduct, Defendants intended to and did intentionally or recklessly cause Plaintiff to suffer severe emotional distress.

25

108.    As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer severe emotional distress, for which she is entitled to an award of damages.

109.    Defendants' extreme and outrageous conduct was knowing, malicious, willful and wanton, entitling Plaintiff to an award of punitive damages

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter judgment in her favor and against Defendants, containing the following relief:

A.    A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the laws of the United States and the State and City of New York;

B.    An injunction and order permanently restraining Defendants from engaging in such unlawful conduct;

C.    An order directing Defendants to place Plaintiff in the position she would have occupied but for Defendants' discriminatory and retaliatory treatment and otherwise unlawful and/or tortious conduct, as well as to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect her employment and personal lives;

D.    An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages, including but not limited to, the loss of past and future income, wages, compensation, seniority and other benefits of employment;

E.      An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including but not limited to, compensation for her mental anguish, humiliation, embarrassment, stress and anxiety, emotional pain and suffering, emotional distress and physical injuries;

F.      An award of damages for any and all other monetary and/or non-monetary losses suffered by Plaintiff in an amount to be determined at trial, plus prejudgment interest;

G.      An award of punitive damages;

H.      An award of costs that Plaintiff has incurred in this action, as well as Plaintiff's reasonable attorneys' fees to the fullest extent permitted by law; and

I.      Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues of fact and damages stated herein.

Dated: New York, New York
        August 2, 2004

                            Respectfully submitted,

                            SANDRA D. FRELIX, P.C.

By: _____
          Sandra D. Frelix, #2211 (SF-0421)
          67 Wall Street, 22nd Floor
          New York, NY  10005
Telephone:  (212) 859-3509
Facsimile:   (212) 862-8212

COUNSEL FOR PLAINTIFF